Evan A. Raynes, State Bar No. 164447
Email: eraynes@symbus.com
Phone: 202-258-0652
Fax: 540-518-9037
Symbus Law Group, LLC
1425 K Street, N.W., Suite 350
Washington, D.C. 20005

Counsel for Plaintiff
LITTLE I, INC.

FILED
CLERK, U.S. DISTRICT COURT

MAY 21 2013

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| Little i, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>World Packaging Corp.,<br><br>Defendant. | Civil Action No. **CV13-03639**<br><br>**COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Little i, Inc. ("Plaintiff") brings this Complaint against Defendant World Packaging Corp. d/b/a Clik Clak Co. ("Defendant"). Plaintiff states as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**Introduction**

This Complaint seeks to vindicate Plaintiff's rights in a patent for its mirrored mint containers and its MIRROR MINTS trademark used to identify such products. Defendant has been aware of Plaintiff's rights since at least as early as 2005 as result of Plaintiff's strong position in the marketplace and contacts between Plaintiff and Defendant advising Defendant of Plaintiff's patent rights. Further, Plaintiff's patent rights have been of public record since 2006. Notwithstanding, Defendant has decided to ignore Plaintiff's patent rights by selling mirrored

1

mint containers that are virtually identical to Plaintiff's containers.  What's more, Defendant is doing so under a trademark that is virtually identical to Plaintiff's MIRROR MINTS trademark. Thus, there is no question that Defendant is willfully infringing Plaintiff's rights.  In fact, as the parties' products and trademarks are virtually indistinguishable, Defendant's actions amount to counterfeiting.  Plaintiff therefore seeks both treble and exemplary damages.  A large award of damages is necessary to discourage similar conduct by Defendants in the future.

**Parties**

1.      Plaintiff is a Washington corporation with its principal place of business at 713 3rd Street, Blaine, Washington 98230.

2.      Defendant is a New York corporation with a place of business and a registered address at 68 Jay Street, Suite 301, Brooklyn, New York 11201.  Defendant also maintains a place of business at 300 Wilson Avenue, Norwalk, Connecticut 06854.  Defendant does business as Clik Clak Co. ("Click Clak") and maintains a website at www.clikclak.com (the "Click Clak Website").

**Jurisdiction**

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a), as this action involves questions of federal patent and trademark law, and arises under 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, and under Lanham Act, 15 U.S.C. § 1051 et seq., including 15 U.S.C. §§ 1114, 1125(a), as Defendant has violated Plaintiff's patent and trademark rights.  This Court has subject matter jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

4.      This court has personal jurisdiction over Defendant because Defendant has substantial contacts and conducts business in the State of California and in this judicial district, and has been infringing Plaintiff's patent and trademark rights in California and in this judicial district, as well as elsewhere.  Defendant's Clik Clak Website states that Defendant "sells [its products] through a nationwide network of recognized and established distributors."  Defendant's products

2

are sold or offered to companies located in California, including companies located in this judicial district, such as Ask Jeeves, Lucy, Google, The Upper Deck, Westfield, and Yahoo!

5.      Venue is proper in this Court under 28 U.S.C. § 1391, as Defendant is subject to personal jurisdiction in this district and a substantial part of the events giving rise to Defendant's claims occurred in this judicial district.

**Facts**

**A.      Plaintiff's Patent Rights**

6.      Patent No. 7237677 for a "MIRRORED ORAL-PRODUCT CONTAINER" was published on July 20, 2006 and issued to Robert I. Berg on July 3, 2007 ("Plaintiff's Patent"). (**Exhibit A.**)  Mr. Berg is Plaintiff's president.

7.      Plaintiff was the exclusive licensee of Plaintiff's Patent throughout the period of Defendant's acts giving rise to this action, including Defendant's infringing acts, and Plaintiff currently is the exclusive licensee of Plaintiff's Patent.

8.      Plaintiff sells breath mints in tins featuring sliding covers, rectangular mirrors on platforms, and elongated holes for dispensing the mints ("Plaintiff's Mirrored Tins"), among other products.

9.      Plaintiff's Mirrored Tins have been sold in several colors, including silver. Representative examples of Plaintiff's Mirrored Tins, including Plaintiff's silver mirrored tins, are shown below.



10.      The bolded patent marking "Patent No. 7,237,677" has appeared on virtually every one of Plaintiff's Mirrored Tins, for example, as shown below.

3

11.     Plaintiff's patent markings provide notice of Plaintiff's rights in Patent No. 7237677.

12.     Plaintiff has sold over 10 million units of Plaintiff's Mirrored Tins throughout the United States since 2004, including in the New York area, where Defendant is located.

13.     Plaintiff's Mirrored Tins have been sold to numerous companies, including CVS, Hallmark, Pier 1, Sephora, Target, Walgreens, and Walmart.

14.     Plaintiff's Mirrored Tins have appeared in numerous publications and television shows, including Glamour, the Herald-Tribune, InStyle, Marie Claire, the New York Daily News, Seventeen, the Today Show, and the Wall Street Journal.

15.     Plaintiff has vigorously enforced its rights in Plaintiff's Patent, including by obtaining a judgment enforcing its rights in Patent No. 7237677 in 2008.  The judgment entered by the court states that Patent No. 7237677 is "valid and enforceable."  *Robert Isaac Berg, et al. v. Webb Company, et al.,* CV 08-00164, D. Hawaii, June 20, 2008.

16.     The Patent is an asset of great value to Plaintiff.

17.     Plaintiff has never given Defendant authorization to use Plaintiff's Patent.

**B.      Plaintiff's Trademark Rights**

18.     Plaintiff owns the trademark MIRROR MINTS.  Plaintiff also owns Trademark Registration No. 2939960 for the mark MIRROR MINTS, covering "candy, breath mints" ("Plaintiff's Registration").  (**Exhibit B.**)

19.     Plaintiff's Registration issued on April 12, 2005, and indicates that the MIRROR MINTS trademark was first used in commerce at least as early as June 16, 2004.

20.     Plaintiff's Registration is valid, subsisting, incontestable, and constitutes *prima facie* evidence of the validity of the MIRROR MINTS trademark and registration, and Plaintiff's exclusive right to use the MIRROR MINTS mark in commerce.

4

21.     Plaintiff's Registration issued to Innovative Product Development, Inc. d/b/a Little i, and was subsequently assigned to Plaintiff.   (**Exhibit B.**)

22.     Plaintiff was the exclusive licensee or owner of the MIRROR MINTS trademark and registration throughout the period of Defendant's acts giving rise to this action, including Defendant's infringing acts, and Plaintiff currently owns the trademark and the registration.

23.     Plaintiff's Mirrored Tins are sold under its MIRROR MINTS trademark.

24.     Plaintiff's MIRROR MINTS trademark is used on Plaintiff's website to identify Plaintiff's Mirrored Tins, as shown below.



25.     Plaintiff's MIRROR MINTS trademark has been used on virtually every one of Plaintiff's Mirrored Tins, for example, as shown below.



5

26.     Plaintiff has sold millions of units of Plaintiff's Mirrored Tins under its MIRROR MINTS trademark and has invested substantial amounts of money on the advertising and promotion of such products under the mark.

27.     Plaintiff's Mirrored Tins sold under the MIRROR MINTS trademark have received significant media attention.

28.     Plaintiff has developed extensive goodwill in its MIRROR MINTS trademark as a result of the long use, advertising, and promotion of the mark, and the degree of public recognition of the mark.

29.     Plaintiff's MIRROR MINTS trademark and registration are assets of great value to Plaintiff.

30.     Plaintiff has never given Defendant authorization to use its MIRROR MINTS trademark.

**C.     Defendant's Wrongful Acts**

31.     Amy Katz, who is identified on Defendant's Clik Clak Website as a co-founder of Clik Clak (Defendant's assumed name), approached Robert Berg, who is Plaintiff's president, at a trade show in New York held on July 10-12, 2005.  During their discussions, Mr. Berg indicated that patent applications had been filed for Plaintiff's Mirrored Tins.  Mr. Berg's statement placed Defendant on notice of Plaintiff's patent rights.  Ms. Katz indicated that she did not believe any patent applications had been filed for Plaintiff's Mirrored Tins because she could not find any record of such applications.  As a lawyer, Ms. Katz knew or should have known that patent applications are not public until they are published by the U.S. Patent and Trademark Office and that, as a result, the absence of any record of a pending application does not indicate that no such application exists.

32.     On July 26, 2005, Mr. Berg's patent counsel sent Ms. Katz a letter stating that Plaintiff had filed several patent applications in the United States and in foreign countries covering Plaintiff's Mirrored Tins.  (**Exhibit C.**)  This letter reinforced Defendant's knowledge of Plaintiff's pending patent application.  Mr. Berg's counsel also stated that Plaintiff had vigorously

enforced its patent rights in the past, but would be willing to consider entering into a collaborative relationship with Defendant if Ms. Katz wished to pursue any products protected by Plaintiff's intellectual property. (*Id.*)

33.     Notwithstanding Defendant's knowledge of Plaintiff's patent rights, Defendant has sold or offered to sell large numbers of mirrored tins that are virtually indistinguishable from Plaintiff's Mirrored Tins ("Defendant's Mirrored Tins").

34.     Defendant's Mirrored Tins have been sold or distributed through Lowe's department store   one of the largest department stores in the United States.  An example of the tins sold or distributed through Lowe's, as depicted on the Defendant's Clik Clak Website, is shown below.



35.     Defendant's Mirrored Tins have been offered to Sencha Naturals, Inc.  Sencha is located in this judicial district at 104 North Union Avenue, Los Angeles, California 90026. Defendant sent Sencha Naturals a sample of Defendant's Mirrored Tins on March 22, 2013. Defendant provided Sencha with a pro forma invoice for 10,000 of Defendant's Mirrored Tins on March 29, 2013.  Defendant indicated to Sencha on April 3, 2013 that it only stocks Defendant's Mirrored Tins in silver.  Defendant indicated to Sencha on April 4, 2013 that Defendant's Mirrored Tins are a "stock item for us," that the tins are "definitely one of our most unique tins," and that Defendant currently had 25,000 units of the tins.

36.     The design, size, and shape of Defendant's Mirrored Tins and Plaintiff's Mirrored Tins is identical.  The materials comprising Defendant's Mirrored Tins and Plaintiff's Mirrored Tins appear to be identical.  Defendant's Mirrored Tins and Plaintiff's silver mirrored tins are identical in color.  The only differences between Defendant's Mirrored Tins and Plaintiff's Mirrored Tins are the trademarks appearing on the tins.

7

37.     Defendant's Mirrored Tins are advertised on Defendant's Clik Clak Website. Defendant's Mirrored Tins are the first item on the "Tins, Containers & Candy" page of Defendant's Clik Clak Website.  (**Exhibit D.**)

38.     Defendant prominently uses MIRROR MINT TIN as a trademark in initial capital letters and bolded print (i.e., **Mirror Mint Tin**) to identify Defendant's Mirrored Tins on the "Tins, Containers & Candy" page and the "Mirror Mint Tin" page of Defendant's Clik Clak Website.  (**Exhibit D.**)

39.     Defendant intentionally selected the mark MIRROR MINT TIN to be identical with, or substantially indistinguishable from, Plaintiff's mark, and to injure Plaintiff.

40.     The information accessible through the "Pricing" tab on the "Mirror Mint Tin" page of Defendant's Clik Clak Website indicates that the price of Defendant's Mirrored Tins is between $2.02 and $2.18, depending on the number of units involved.  (**Exhibit D.**)

**D.      Injury to Plaintiff**

41.     Defendant's sale and offer for sale of Defendant's Mirrored Tins infringes Plaintiff's Patent.

42.     Defendant's use of the mark MIRROR MINT TIN to identify Defendant's Mirrored Tins creates a likelihood of confusion with Plaintiff's MIRROR MINTS trademark and infringes Plaintiff's rights in the trademark and the registration for the mark.

43.     Defendant's use of the mark MIRROR MINT TIN constitutes use of a counterfeit mark within the meaning of 15 U.S.C. § 1116, as MIRROR MINT TIN is identical with, or substantially indistinguishable from, Plaintiff's MIRROR MINTS trademark.

44.     Defendant was aware of Plaintiff's patent and trademark rights at least as early as 2005 as a result of the substantial sales of Plaintiff's Mirrored Tins, including in the New York region, and Defendant's contacts with Plaintiff.   Plaintiff's patent and trademark rights were of public record soon after Defendant's contacts with Plaintiff, as Plaintiff's Registration issued in 2005, Plaintiff's patent application was published in 2006, and Plaintiff's Patent issued in 2007.

8

1  Defendant's knowledge of Plaintiff's patent and trademark rights establishes that Defendant's acts

2  of infringement and counterfeiting have been willful at all times relevant to this Complaint.

3       45.     Defendant's willful infringement of Plaintiff's patent and trademark rights has

4  caused substantial harm to Plaintiff and was designed to cause such harm.

5       46.     Plaintiff has no adequate remedy at law for Defendant's acts of intentional patent

6  and trademark infringement.

7                              **COUNT I**
                  **INFRINGEMENT OF PATENT NO. 7237677**
8                          **35 U.S.C. § 271**

9       47.     Plaintiff incorporates and realleges all of the allegations contained in the preceding

10  paragraphs of this Complaint.

11       48.     Defendant has infringed and continues to infringe Patent No. 7237677 by making,

12  importing, distributing, selling, offering to sell, or otherwise using mirrored tins that embody the

13  patented invention in violation of 35 U.S.C. § 271.

14       49.     Plaintiff has suffered and continues to suffer damages, including lost sales, as a

15  direct and proximate result of Defendant's infringement.

16       50.     Plaintiff has suffered and continues to suffer irreparable harm, including the loss of

17  exclusivity conferred to Plaintiff by the patent laws of the United States, as a direct and proximate

18  result of Defendant's infringement.

19       51.     Defendant had actual and constructive notice of Plaintiff's rights in the Patents at

20  all times relevant to this Complaint and its acts of infringement have been and continue to be

21  willful, making this an exceptional case.

22                              **COUNT II**
        **INFRINGEMENT OF TRADEMARK REGISTRATION NO. 2939960**
23                   **15 U.S.C. § 1114, Lanham Act § 32(a)**

24       52.     Plaintiff incorporates and realleges all of the allegations contained in the preceding

25  paragraphs of this Complaint.

26       53.     Defendant's actions are likely to cause confusion, mistake, or deception as to the

27  origin, sponsorship, approval, or licensing of Defendant's products and commercial activities, and

28

1    thus constitute  infringement of Plaintiff's registration for the MIRROR MINTS trademark,

2    Trademark Registration No. 2939960, in violation of 15 U.S.C. § 1114(1).

3        54.     Plaintiff has suffered and continues to suffer damages, including lost sales, as a

4    direct and proximate result of Defendant's infringement.

5        55.     Plaintiff has suffered and continues to suffer irreparable harm, including the loss of

6    exclusivity conferred to Plaintiff by the trademark laws of the United States, as a direct and

7    proximate result of Defendant's infringement.

8        56.     Defendant had actual and constructive notice of Plaintiff's rights in the MIRROR

9    MINTS trademark at all times relevant to this Complaint and its acts of infringement have been

10   and continue to be willful, making this an exceptional case.

11                          **COUNT III**
                **TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
12            **15 U.S.C. § 1125(a)(1)(A), Lanham Act § 43(a)(1)(A)**

13       57.     Plaintiff incorporates and realleges all of the allegations contained in the preceding

14   paragraphs of this Complaint.

15       58.     Defendant's actions are likely to cause confusion, mistake, or deception as to the

16   origin, sponsorship, approval, or licensing of Defendant's products and commercial activities, and

17   thus constitute trademark infringement, false designation of origin, passing off, and unfair

18   competition with respect Plaintiff's MIRROR MINTS trademark in violation 15 U.S.C. §

19   1125(a)(1)(A).

20       59.     Plaintiff has suffered and continues to suffer damages, including lost sales, as a

21   direct and proximate result of Defendant's infringement.

22       60.     Plaintiff has suffered and continues to suffer irreparable harm, including the loss of

23   exclusivity conferred to Plaintiff by the trademark laws of the United States, as a direct and

24   proximate result of Defendant's infringement.

25       61.     Defendant had actual and constructive notice of Plaintiff's MIRROR MINTS

26   trademark at all times relevant to this Complaint and its acts of infringement have been and

27   continue to be willful, making this an exceptional case.

28

**COUNT IV**
**COMMON LAW TRADEMARK INFRINGEMENT AND**
**UNFAIR COMPETITION**

62.     Plaintiff incorporates and realleges all of the allegations contained in the preceding paragraphs of this Complaint.

63.     Defendant's actions constitute common law trademark infringement, passing off, and unfair competition with respect Plaintiff's MIRROR MINTS trademark in violation of California common law.

64.     Plaintiff has suffered and continues to suffer damages, including lost sales, as a direct and proximate result of Defendant's infringement.

65.     Plaintiff has suffered and continues to suffer irreparable harm, including the loss of exclusivity conferred to Plaintiff by the trademark laws of the United States, as a direct and proximate result of Defendant's infringement.

66.     Defendant had actual and constructive notice of Plaintiff's rights in the MIRROR MINTS trademark at all times relevant to this Complaint and its acts of infringement have been and continue to be willful, making this an exceptional case.

**Prayer for Relief**

I.     Plaintiff prays for entry of judgment in its favor on its claim for patent infringement and respectfully requests:

A.     That this Court find Defendant has infringed Patent No. 723767 under 35 U.S.C. § 271;

B.     That this Court preliminarily and permanently enjoin Defendant from infringing Patent No. 7237677 and any further acts of infringement of the patent under 35 U.S.C. § 283;

C.     That this Court award damages to compensate Plaintiff for Defendant's infringement of Patent No. 7237677 in an amount to be determined at trial, and in no event less than Defendant's profits, together with interest and cost, under 35 U.S.C. § 284, which Plaintiff preliminarily estimates to be no less than $50,000;

11

D.   That this Court treble any damages awarded to Plaintiff as a result of Defendant's willful infringement of Patent No. 7237677 under 35 U.S.C. § 284;

E.   That this Court find this to be an exceptional case and award Plaintiff its reasonable attorneys' fees under 35 U.S.C. § 285;

F.   That this Court award Plaintiff its costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure; and

G.   That this Court award Plaintiff such other relief as it deems just and proper, including exemplary damages and pre- and post-judgment interest.

II.   Plaintiff prays for entry of judgment in its favor on its claims for trademark infringement and unfair competition, and respectfully requests:

A.   That this Court find Defendant has infringed Plaintiff's MIRROR MINTS trademark, and Plaintiff's registration for the MIRROR MINTS trademark, Trademark Registration No. 2939960, under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a)(1)(A);

B.   That this Court preliminarily and permanently enjoin Defendant from infringing Plaintiff's MIRROR MINTS trademark, and Plaintiff's registration for the MIRROR MINTS trademark, Trademark Registration No. 2939960, under 15 U.S.C. § 1116;

C.   That this Court award damages to compensate Plaintiff for Defendant's infringement of Plaintiff's MIRROR MINTS trademark, and Plaintiff's registration for the MIRROR MINTS trademark, Trademark Registration No. 2939960, in an amount to be determined at trial, and in no event less than Defendant's profits, together with interest and cost, under 35 U.S.C. § 1117, which Plaintiff preliminarily estimates to be no less than $50,000;

D.   That this Court treble any damages awarded to Plaintiff as a result of Defendant's use of the counterfeit mark MIRROR MINT TIN to infringe Plaintiff's MIRROR

12

1    MINTS trademark, and Plaintiff's registration for the MIRROR MINTS trademark,

2    Trademark Registration No. 2939960, under 15 U.S.C. § 1117;

3    E.    That this Court award Plaintiff statutory damages, at Plaintiff's election, of up to

4    $2,000,000 for Defendant's willful use of the counterfeit mark MIRROR MINT

5    TIN to infringe Plaintiff's MIRROR MINTS trademark, and Plaintiff's registration

6    for the MIRROR MINTS trademark, Trademark Registration No. 2939960, under

7    15 U.S.C. § 1117;

8    F.    That this Court find this to be an exceptional case and award Plaintiff its reasonable

9    attorneys' fees under 15 U.S.C. § 1117;

10   G.    That this Court award Plaintiff its costs under Rule 54(d)(1) of the Federal Rules of

11   Civil Procedure; and

12   H.    That this Court award Plaintiff such other relief as it deems just and proper,

13   including exemplary damages and pre- and post-judgment interest.

14                              **Demand for Jury Trial**

15   Plaintiff respectfully requests a trial by jury on all issues.

16                                             Respectfully submitted,

17

18   Dated:  May 21, 2013

19                                             Evan A. Raynes
                                               Symbus Law Group, LLC
20                                             1425 K Street, N.W., Suite 350
                                               Washington, D.C.  20005
21                                             Phone:  202-258-0652
                                               Fax:  540-518-9037
22                                             eraynes@symbus.com

23
                                               Counsel for Plaintiff
24                                             LITTLE I, INC.

25

26

27

28

                                        13

# EXHIBIT A

US007237677B2

(12) **United States Patent**

Berg

(10) Patent No.: **US 7,237,677 B2**
(45) **Date of Patent:** **Jul. 3, 2007**

(54) **MIRRORED ORAL-PRODUCT CONTAINER**

(76) Inventor: **Robert I. Berg**, 8435 Seafair Ct., Blaine, WA (US) 98230

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 281 days.

(21) Appl. No.: **10/858,391**

(22) Filed: **Jun. 2, 2004**

(65) **Prior Publication Data**

US 2006/0157378 A1    Jul. 20, 2006

**Related U.S. Application Data**

(60) Provisional application No. 60/511,298, filed on Oct. 16, 2003.

(51) **Int. Cl.**
**B65D 71/00** (2006.01)

(52) **U.S. Cl.** ........................ **206/581**; 206/37; 206/235

(58) **Field of Classification Search** ............ 206/37–39, 206/235, 581; 132/287, 294, 301, 304, 316; 220/252, 345.2, 345.4

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,672,417 A | 6/1928 | Leberman | |
| 1,695,477 A | 12/1928 | Zeindlhofer | |
| 1,709,182 A | 4/1929 | McKnight et al. | |
| 2,178,188 A | 10/1939 | Schmidt | |
| 2,196,801 A | 4/1940 | Kreisler | |
| 2,309,111 A | 1/1943 | Hotersall | |
| 2,362,120 A | 11/1944 | De Swart | |
| 2,393,568 A | 1/1946 | Root | |
| 2,479,854 A | 8/1949 | Miller | |
| 2,489,525 A | 11/1949 | Crane | |

| | | | |
|---|---|---|---|
| 3,442,414 A | 5/1969 | Pelli | |
| 3,894,550 A | 7/1975 | Eaton | |
| 3,921,649 A | * 11/1975 | Milbrath | ...................... 132/308 |
| 4,337,859 A | * 7/1982 | Murphy et al. | ............... 206/37 |
| 4,421,127 A | * 12/1983 | Geer | ........................... 132/294 |
| 4,518,092 A | 5/1985 | Contreras, Sr. | |
| 4,589,431 A | 5/1986 | Yuhara | |
| 4,799,503 A | 1/1989 | Tahara | |
| 4,819,829 A | * 4/1989 | Rosten et al. | ............ 220/345.3 |
| 4,932,547 A | * 6/1990 | Rodriguez | .................... 206/38 |
| 5,163,457 A | * 11/1992 | Lombardi, Jr. | ............... 132/304 |
| 5,205,431 A | 4/1993 | Zinnbauer | |
| 5,476,194 A | 12/1995 | Hippely | |
| 5,611,362 A | 3/1997 | Duncan et al. | |
| 5,638,838 A | 6/1997 | Lombardi | |
| 5,680,933 A | 10/1997 | Miller | |
| 5,842,486 A | 12/1998 | Davis et al. | |
| 6,070,749 A | 6/2000 | Joulia | |
| 6,454,115 B1 | 9/2002 | Allasia | |

(Continued)

FOREIGN PATENT DOCUMENTS

GB        2 363 712        1/2002

(Continued)

OTHER PUBLICATIONS

CANDY7.com website printed from the Internet (one page).

(Continued)

*Primary Examiner*—Luan K. Bui
(74) *Attorney, Agent, or Firm*—Stephen B. Parker, Esq.

(57) **ABSTRACT**

An oral-product container is disclosed that includes: a) a plurality of breath fresheners contained therein for breath freshening purposes; and b) a mirror for visage freshening purposes.

**22 Claims, 18 Drawing Sheets**



Mirror: Attached or integrally formed in interior bottom and/or top.

**US 7,237,677 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,612,313 B1 | 9/2003 | Fontaine | | |
| 6,644,488 B1 | 11/2003 | Coleman | | |
| 6,976,577 B2 * | 12/2005 | Devine | ........................ | 206/37 |
| 2002/0139802 A1 * | 10/2002 | Cross | ......................... | 206/38 |
| 2002/0179485 A1 | 12/2002 | Shih | | |
| 2003/0234204 A1 | 12/2003 | Lam et al. | | |
| 2004/0069671 A1 | 4/2004 | Lam et al. | | |
| 2005/0006267 A1 | 1/2005 | Lam et al. | | |

2005/0069373 A1    3/2005  Parikh et al.

FOREIGN PATENT DOCUMENTS

GB        2 363 712 A     1/2002

OTHER PUBLICATIONS

Search Report in UK, Apr. 28, 2006.

* cited by examiner



FIG. 1



FIG. 2

FIG. 3

hinge

Lid

Body

Mirror: Attached or integrally formed in
interior of lid (i.e., sub-portion of container).



FIG. 4

hinge

Opening into container (not shown) can be any style and/or size and/or shape:
-such as, e.g., as shown in FIGS. 1-3; and/or
-such as, e.g., another form of opening or the like.

Mirror: formed on either surface under hinged cover. (Here: mirror is formed external to product containing Interior.)

FIG. 5



Mirror: formed in exterior surface of container; and/or attached to exterior of container.

Top

Bottom

Dashed line indicates that exterior of container can be (if desired) contained within a protective covering (such as, e.g., during transport) to, e.g., protect mirror. Cover can include, e.g., plastic wrap (e.g., providing a full enclosure) a removable sticker (e.g., covering only a mirror and/or a portion of the container); etc.

FIG. 6



Container Wall
(partial view-Example A)

A

Container Wall
(partial view-Example B)

B

Diagram A: mirror attached to container wall (e.g., mirror sticker, glue attachment, magnetic attachment and/or other).

Diagram B: mirror integral with container wall (e.g., buffed reflective surface and/or other).



FIG. 7

Mirror on interior side

Pivoted open container: Example A

top

bottom

Mirror on interior side

Pivoted open container: Example B

partial opening

top

bottom

closed container

Container (e.g., preferably sized to fit easily within pocket during use

Average sized adult pants

Rear pockets

FIG. 8



transport package

oral product

individual containers
(shown for illustrative purposes,
but contained inside transport
package)

FIG. 9

Case 2:13-cv-03639-JC   Document 1   Filed 05/21/13   Page 26 of 61   Page ID #:32



Insert

base

FIG. 10



FIG. 11

Case 2:13-cv-03639-JC Document 1 Filed 05/21/13 Page 28 of 61 Page ID #:34



# FIG.12

Case 2:13-cv-03639-JC   Document 1   Filed 05/21/13   Page 29 of 61   Page ID #:35



FIG. 13

Case 2:13-cv-03639-JC Document 1 Filed 05/21/13 Page 30 of 61 Page ID #:36



FIG.14



FIG.15



FIG. 16



FIG. 17(A)



FIG. 17(B)



FIG. 17(C)



FIG. 17(D)

Case 2:13-cv-03639-JC   Document 1   Filed 05/21/13   Page 34 of 61   Page ID #:40



FIG. 18

Here: cover includes downward flanges that can slide around and engage the base under the peripheral lip shown.

US 7,237,677 B2

**1**

## MIRRORED ORAL-PRODUCT CONTAINER

The present application claims priority to U.S. provisional application Ser. No. 60/511,298 filed on Oct. 16, 2003, the entire disclosure of which is incorporated herein by reference as though recited herein in full.

### BACKGROUND

1. Field of the Invention

The present invention relates to containers for oral-products and some preferred embodiments relate to containers for breath fresheners, such as, e.g., mints or the like.

2. Discussion of the Background

In some circumstances in modern culture, individuals seek to enhance their personal image, such as, e.g., their appearance, their odor, and/or the like. Individuals may seek to enhance their personal image for a variety of reasons, such as, by way of example, to: a) prepare for a date and/or a romantic encounter; b) make a good impression on one or more individual; c) enhance one's self-confidence; and/or d) achieve a wide variety of other goals.

Breath Freshening

In modern culture, the use of breath fresheners to, e.g., enhance an individual's oral freshness, such as, e.g., oral cleanliness, oral odor and/or the like, has become widely accepted. A wide variety of breath fresheners exist in the market, such as, e.g., various breath freshening confectionaries and candies and/or the like, such as, e.g., mint-flavored breath fresheners, cinnamon-flavored breath fresheners, fruit-flavored (such as, e.g., lemon, lime, orange and/or the like) breath fresheners; and/or the like. Some existing breath fresheners include that of, e.g., ALTOIDS, TIC TAC, BAR-KLEYS and various other breath freshener products.

Visage Freshening

In modern culture, the use of items to enhance an individual's visage or face is not as widely accepted. In some instances, individuals may carry compacts (having small mirrors and make-up) with which they may attend to their personal visage freshening (such as, e.g., farding).

However, while individuals often freely take breath fresheners in the accompaniment of others, individuals are often more reluctant to use a compact in the accompaniment of others. Among other things, the use of cosmetics, make-up and/or the like visage freshening products can often have a negative connotation, such as, e.g., creating an appearance of vanity. As a result, in order to be able to look at oneself in a mirror (such as, e.g., to ascertain if a need exists for visage freshening and/or to engage in visage freshening), an individual often has to leave a room to a location of privacy, such as, e.g., a bathroom or the like. While individuals may carry compacts or the like, in many contexts, individuals will not use them in the accompaniment of others. By way of example, while in a romantic setting, a woman may be reluctant to check her facial make-up in front of her partner. Among other things, the woman may not wish to portray vanity and/or to provide an appearance to her partner that she has some concern for the freshness of her visage—e.g. which might inadvertently be suggestive of personal of vanity, of a level of interest in her partner, and/or the like.

There has been a need for a product that can overcome some of the above and/or other problems.

### SUMMARY OF THE INVENTION

The preferred embodiments of the present invention have been developed in view of the above mentioned and/or other issues in the related art. In some embodiments, one or more of the above and/or other problems related to visage freshening can be overcome. In addition, some preferred embodiments can advantageously provide a highly unique breath freshening container product having unique functional and aesthetic qualities.

According to some illustrative embodiments, an oral-product container includes: a) a plurality of breath fresheners contained therein for breath freshening purposes; and b) a mirror for visage freshening purposes. In some embodiments, the mirror can be on an interior of said container when said container is closed. In some embodiments, the mirror can be on an exterior of said container when said container is closed. In some illustrative embodiments, said breath fresheners include at least flavor from the group consisting of: peppermint; spearmint; other mint flavors; wintergreen; cinnamon; licorice; citric flavors; sour flavors; and herbal or spice flavors.

According to some illustrative embodiments, a method of distributing the containers can include, e.g.: filling a plurality of said containers in a packaging container; and transporting the filled packaging container to a retail center (such as, e.g., for direct sales to consumers).

According to some illustrative embodiments, a method of freshening an individual includes: providing the individual with a container having a plurality of breath fresheners contained therein and a mirror; having the individual place at least one of said breath fresheners in the individual's mouth for breath freshening purposes; and having the individual view himself or herself in said mirror for visage freshening purposes. In some embodiments, said visage freshening purposes can include determining whether the individual's face needs freshening and/or can include freshening the individual's face with cosmetic products or devices.

The above and/or other aspects, features and/or advantages of various embodiments will be further appreciated in view of the following description in conjunction with the accompanying figures. Various embodiments can include and/or exclude different aspects, features and/or advantages where applicable. In addition, various embodiments can combine one or more aspect or feature of other embodiments where applicable. The descriptions of aspects, features and/or advantages of particular embodiments should not be construed as limiting other embodiments or the claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying figures are provided by way of example, without limiting the broad scope of the invention or various other embodiments, wherein:

FIG. **1** is a schematic side perspective view of a container according to some illustrative embodiments;

FIG. **2** is a schematic side perspective view of another container according to some illustrative embodiments;

FIG. **3** is a schematic side perspective view of another container according to some illustrative embodiments;

FIG. **4** is a schematic side perspective view of another container according to some illustrative embodiments;

FIG. **5** is a schematic side perspective view of another container according to some illustrative embodiments;

FIG. **6** is a schematic side view showing portions of illustrative examples A and B depicting some illustrative mirror forming embodiments;

US 7,237,677 B2

3

FIG. **7** is a plurality of schematic side perspective views showing other containers according to some illustrative embodiments in which the container can be operable as a mirror stand;

FIG. **8** is a schematic diagram showing a container located within the pants pocket of a user;

FIG. **9** is a schematic diagram showing a plurality of containers filled with oral products, such as, e.g., breath fresheners, contained within a transport package (such as, e.g., a crate, cardboard box, box and/or the like);

FIGS. **10-18** are other views of containers according to some illustrative embodiments;

In particular, FIG. **10** is a front perspective view according to some embodiments, FIG. **11** is a first end view taken from the left side of the embodiment shown in FIG. **10**, FIG. **12** is a second end view taken from the right side of the embodiment shown in FIG. **10**, FIG. **13** is a side view taken from a front side of the embodiment shown in FIG. **10**, FIG. **14** is a side view taken from a back side of the embodiment shown in FIG, **15** is a top view of the embodiment shown in FIG. **10**, and FIG. **16** is a bottom view of the embodiment shown in FIG. **10**;

In addition, FIGS. **17**(A)-**17**(D) show various alternative top views that may be employed instead of the structure shown in FIG. **15**; and

FIG. **18** is an exploded view showing a device similar to that shown in FIG. **10** with an internal cover plate member removed and with an illustrative slider cover.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The following description sets forth some illustrative preferred embodiments of the invention. It should be understood based on this disclosure that the following description is illustrative and non-limiting and that various modifications, alterations, changes and/or the like can be employed in various embodiments of the invention. In addition, various components of the various embodiments can be replaced with equivalent structures (including presently know equivalents and/or future known equivalents) as would be understood based on this disclosure.

### Illustrative Embodiments

FIGS. **1-9** show some illustrative embodiments of the invention. In the preferred embodiments (such as, e.g., in preferred implementations of the embodiments shown in FIGS. **1-9**), an oral-product container is provided that includes: a) a plurality of breath fresheners contained therein for breath freshening purposes; and b) a mirror for visage freshening purposes. Although a variety of illustrative embodiments are shown, it should be understood based on this disclosure that the illustrative embodiments can vary widely and that these are merely some preferred examples.

In preferred embodiments, the container can be used by an individual in order to orally consume one or more breath freshener for breath freshening purposes and/or to visually view himself or herself for visage freshening purposes. In this disclosure, the terminology visage freshening purposes includes, among other things, viewing for purposes of determining if a need exists for visage freshening and conducting visage freshening, such as, e.g., using cosmetic products or devices (such as, e.g., applying blush with a blush applicator, applying mascara with a mascara applicator, applying lipstick with a lipstick applicator, removing

4

cosmetics with a cosmetic remover [which can include, e.g., a tissue and/or the like], etc.).

FIG. **1** shows one illustrative embodiment including a container having top and bottom halves that are connected together via a hinge. When in a closed condition, such as, e.g., shown in FIG. **1**, the two halves form an enclosure in which oral products can be contained.

In some preferred embodiments, a mirror can be formed on an interior surface of the top half. Upon pivoting the top half away from the bottom half, the mirror can be revealed. In this manner, the mirror can be—to some degree—hidden from view of those accompanying the user. Thus, a user can, e.g., take a quick look at himself or herself while appearing to merely open a container to merely access, e.g., some breath fresheners.

In some preferred embodiments, a mirror can alternatively or additionally be formed on an exterior surface of the top half. In this manner, a user can, among other things, easily utilize the mirror without regard to oral product inside the container (e.g., the user can easily utilize the mirror while the oral product is securely contained in the container).

In some preferred embodiments, a mirror can alternatively or additionally be formed on interior and/or exterior surfaces of the bottom half. Additionally, while in preferred embodiments a mirror will be formed upon a larger side of the container, in some embodiments a mirror could alternatively or additionally be formed on a narrower edge of the container (e.g., either interior and/or exterior to the container, but preferably exterior to the container).

FIG. **2** illustrates another embodiment in which a container has a top portion and a bottom portion that are laterally slidable with respect to one another in order to open the container. In this embodiment, a mirror can be formed—as before—on interior and/or exterior surfaces of the top and/or bottom portions, and upon large sides and/or narrow edges thereof.

FIG. **3** illustrates another embodiment in which a hinged lid is formed in a sub-portion of the container. Among other things, this embodiment can, e.g., facilitate opening of the container to reveal and internal mirror while the oral product is securely contained therein. In preferred implementations of this embodiment, the mirror could be formed internal to the hinged lid. However, in other embodiments, a mirror could be formed alternatively or additionally on other portions of the container.

FIG. **4** illustrates another embodiment in which a mirror can be formed underneath a separate mirror cover. In some embodiments, such as, e.g., shown in FIG. **4**, the separate mirror cover can be hinged to the container. In such embodiments, a mirror can be formed on either surface under the hinged cover. In this illustrative embodiment, the mirror can be protected from external environmental factors (e.g., under the cover) and can be isolated from the container interior (e.g., separate from the oral product therein).

FIG. **5** illustrates another embodiment in which a container can have a generally round large side (such as, e.g., a generally circular, elliptical or other rounded shape). It should be understood that a variety of container shapes could be used and the illustrative embodiments are merely exemplary. In the most preferred embodiments, however, the container has a large side and a narrow edge. In this manner, as shown in FIG. **8**, the container can, most preferably, easily slide into a storing position, such as, e.g., inside a user's pocket (such as, e.g., a rear pants pocket as shown by way of example).

US 7,237,677 B2

5

In some illustrative embodiments, a large side of the container can have a maximum diameter of between about 1 inches and 6 inches. In some other illustrative embodiments, a large side of the container can have a maximum diameter of between about 2 and 5 inches. In some other illustrative embodiments, a large side of the container can have a maximum diameter of between about 3 and 4 inches. In some illustrative embodiments, a narrow side of the container can have a maximum width of between about ¼ inch and 1 inch. In some other illustrative embodiments, the narrow side of the container can have a maximum width of between about ⅓ inch and ⅔ inch. Although not shown, in some embodiments, one or more of the large sides of the container can also include a bowed configuration or curvature so as to conform to a user's buttocks when placed within a pant pocket as shown in FIG. **8**.

The illustrative example shown in FIG. **5** also includes a reflective surface or mirror formed exterior to the container. It should be understood based on this disclosure that a mirror could be alternatively or additionally formed interior to the container.

FIG. **6** shows some illustrative methods for forming the mirror on the container. Example A illustrates some instances in which the mirror includes materials attached to the container wall (such as, e.g., using a mirror sticker that is applied, using glues or adhesives to attach mirror components, using a magnetic attachment, using a mechanical attachment [such as, e.g., a rivet, a screw and/or other mechanism] and/or the like). Example B illustrates some instances in which the mirror is formed integrally in the container wall (such as, e.g., a highly buffed metal surface, a chemically treated surface and/or the like).

FIG. **7** shows some illustrative embodiments in which a container has an open position in which the container serves as a stand for the mirror. While the container can serve as a stand for the mirror using a variety of other configurations (as would be apparent based on this disclosure), in the illustrative embodiment, the container can include an internal mirror on a top half of the container. The container can then be configured such that when it is pivoted open, it can be placed in a fully open position as shown in FIG. **7** in which the container forms a generally A-frame structure or a generally inverted-V structure as shown. Preferably, the container is configured such that the container is lockable in an open position and/or in a closed position (such as, e.g., providing snap-fit engaging members between the top and bottom portions).

FIG. **7** also shows two illustrative examples: Example A shows an opened container having a substantially fully open bottom; and Example B shows an opened container having a partially open bottom. Among other things, Example B can facilitate use of the container in the open position while breath fresheners (shown in dashed lines in Example B) are securely retained in the container.

In some preferred embodiments, the container can be made with metal, such as, e.g., of tin, aluminum, stainless steel, iron, copper and/or other metal. In some preferred embodiments, the container can be made with natural and/or synthetic resins, such as, e.g., various plastics and/or the like. In some preferred embodiments, the container can be made with paper, cardboard, wood and/or the like materials. In some preferred embodiments, the container can be shrouded within a plastic wrap and/or another wrapping medium, such as, e.g., a foil wrap. Among other things, such a wrap can help to protect the contents within the container and/or can help to protect the container itself. Such a plastic wrap could be, e.g., a manually removable wrap that is

6

removed by an end consumer who uses the container for oral and/or visage freshening purposes. In some embodiments, a plurality of containers can be wrapped together for bulk sales to a consumer (such as, e.g., in groups of 2, 4, 6, 12 and/or the like).

Mirror(s)

In various embodiments, a number of mirror constructions can be employed. For example, in some embodiments one or more of the following types of mirrors (i.e., reflective surfaces) can be employed.

1. A glass with a reflective coating (such as, e.g., a metal undercoating), such as, e.g., a common household mirror;
2. A polymer material with a reflective coating;
3. A metal, such as, e.g., aluminum, chrome and/or other metal having a highly reflective surface (such as, e.g., a buffed surface and/or otherwise smooth and reflective surface finish and/or the like).

In preferred embodiments, the mirror has a sufficient extent of reflectivity to enable an individual to hold the mirror or otherwise locate the mirror within about 6 inches to 1 foot, or even within about 1 foot to 2 feet, from the individual's face and to visually perceive facial details without significant content distortion. In preferred embodiments, the reflectivity is sufficient to enable a user to perform common cosmetic visage freshening tasks.

In some preferred embodiments, the mirrors are made with one or more of the following properties: a) breakproof or substantially breakproof materials; b) shatterproof or substantial shatterproof materials; c) appropriate non-toxic materials for food product packaging; and/or d) other appropriate properties for food product packaging.

In some illustrative embodiments, mirrors can employ aspects of one or more of the features of the mirrors shown in the following documents (each of which are incorporated herein by reference in their entireties and are included in the above-reference provisional application):

1. http://www.ultralight-sports.com/mirror.html (including, e.g., mirrors made from made from a premium reflective plastic film laminated to smooth coated paper);
2. http://www.e-sci.com/genSci/RENDER/7/1035/1080/ 9982. html (including, e.g., mirrors having a substrate that is acrylic with an aluminum coating for a reflecting surface);
3. http://www.goodturn.biz/mirrors.html
4. http://www.csmirrors.co.uk/index.php?pageID=acrylic (including, e.g., acrylic mirrors);
5. http://www.csmirrors.co.uk/ index.php?pageID=stainlesssteel (including, e.g., stainless steel mirrors);
6. http://www.alsacorp.com/Laminates.html (including, e.g., "ChromeFX sheeting [that] is a decorative product based upon GE HP92H LEXAN® films and a Molecular Metallic Chrome Film protected by the LEXAN® system and backed by an adhesive system").

Oral Products

In various embodiments, a plethora of different oral-products can be contained within the containers. In some embodiments, the oral-products can include, e.g., breath fresheners. For example, such breath fresheners may, e.g., enhance an individual's oral freshness, such as, e.g., oral cleanliness, oral odor and/or the like. Various embodiments can use any currently known and/or later known fresheners, such as, e.g., various breath freshening candies and/or the like, such as, e.g., mint-flavored fresheners, cinnamon-flavored fresheners, fruit-flavored (such as, e.g., lemon,

US 7,237,677 B2

7

lime, orange and/or the like) fresheners and/or the like. In some embodiments, breath fresheners similar to, e.g., ALTOIDS, TIC TACS, BARKLEYS, CERTS and/or various other breath freshener products can be used.

In some illustrative embodiments, oral products can include one or more of the following:

- a) gum (such as, e.g., wrapped chewing gum strips [such as, e.g., WRIGLEY'S BIG RED gum sticks, WRIGLEY'S SPEARMINT gum sticks, etc.], gum balls [such as, e.g., EVERCREST mint gum balls, etc.]);
- b) candy coated gum (such as, e.g., WRIGLEY'S ECLIPSE rectangular gum chews);
- c) hard-confectionary (such as, e.g., hard mints);
- d) quick-dissolving confectionary (such as, e.g., quick dissolving mints)(such as, e.g., lasting under about 30 seconds in normal usage in an adult user's mouth);
- e) slow-dissolving confectionary (such as, e.g., longer lasting mints or lozenges)(such as, e.g., lasting over one minute in normal usage in an adult user's mouth); and/or
- f) strip-shaped confectionary (such as, e.g., ALTOIDS strips and/or LISTERINE POCKET PACKS, etc.).

While a variety of illustrative oral products are described herein, it should be understood based on this disclosure that various embodiments can employ a variety of other oral products (such as, e.g., various food products [e.g., candies, confectioneries or other food products], medicinal products, flavored products and/or the like).

In some embodiments, the oral products can include breath fresheners having one or more of the following flavors: peppermint; spearmint; other mint flavors; wintergreen; cinnamon; licorice; citric flavors (e.g., lemon, orange, lime, etc.); sour flavors; herbal or spice flavors (e.g., garlic, onion and/or the like) and/or other now or later known breath freshener flavors.

In some embodiments, the oral products include all or substantially all natural ingredients. In some embodiments, all or substantially all of the ingredients contributing to the flavor of the oral products are natural ingredients.

In some embodiments, the oral products can include at least some or all of the following ingredients (such as, e.g., found in BARKLEYS PEPPERMINT mints): sugar; powdered glucose; sorbitol; maltodextrin; magnesium stearate; oil of peppermint (e.g., triple distilled oil of peppermint); natural and artificial flavors. In some embodiments, the oral products can include at least some or all of the following ingredients (such as, e.g., found in BARKLEYS WINTERGREEN mints): sugar; powdered glucose; maltodextrin; magnesium stearate; artificial flavors. In some embodiments, the oral products can include at least some or all of the following ingredients (such as, e.g., found in BARKLEYS CINNAMON mints): sugar; powdered glucose; maltodextrin; magnesium stearate; natural and artificial flavors; oil of peppermint.

In some embodiments, the oral products have very low calories. In some embodiments, the oral products have very low carbohydrate values, such as, e.g., less than about 10 grams per serving, or, more preferably, less than about 5 grams per serving, or, more preferably, less than about 3 grams per serving, or, more preferably, less than about 2 grams per serving.

In some embodiments, one or more of the following ingredients can be used to create a breath freshener product: sugar, dextrin, starch, arabic gum, natural and artificial flavors, magnesium stearate, carnauba wax (such as, e.g., found in TIC TACS). In some embodiments, there will not

8

be a significant source of calories from fat, saturated fat, cholesterol, fiber, vitamin A, vitamin C, calcium and/or iron.

In some illustrative embodiments, the breath fresheners can have a serving size of 1 piece (such as, e.g., about 0.3-0.4 grams per piece), can come in containers having about 30-50 per container, and can have a total amount of calories per serving of about 1-2 calories (such as, e.g., found in TIC TACS).

In some illustrative embodiments, each piece can have one or more, preferably all, of the following amounts (followed by % of daily value): total fat: 0 g, 0%; sodium: 0 mg, 0%; total carbohydrates: 0 g, 0%; sugars, 0 g; and/or protein, 0 g.

In some embodiments, the breath fresheners can include one or more of the following ingredients (such as, e.g., found in ALTOIDS WINTERGREEN mints): sugar; artificial flavor; gum arabic; gelatin; glucose syrup; natural Flavor.

In some embodiments, the breath fresheners can include one or more of the following nutrition facts (such as, e.g., found in ALTOIDS WINTERGREEN mints): serving size=3 pieces (about 2 g); servings per container=about 50; calories total=about 10; calories from fat=about 0.

In some embodiments, the breath fresheners can include one or more of the following ingredients (such as, e.g., found in ALTOIDS PEPPERMINT): sugar; oil of peppermint, gum arabic, gelatin, corn syrup.

In some embodiments, the breath fresheners can be made to temporarily mask bad breath and/or a bad taste in one's mouth. In some embodiments, the breath fresheners can be made to (e.g. using chemicals, compounds or the like) help reduce bacteria (e.g., anaerobic bacteria) in a user's mouth.

In some embodiments, the breath fresheners can include, e.g., retsyn, partially hydrogenated cottonseed oil and/or copper gluconate.

In some embodiments, the breath fresheners can include chlorophyll (such as, e.g., in CLORETS) and/or the like to, for example, help absorb or reduce bad odors.

In some embodiments, the breath fresheners can include maltitol and/or other sweeteners.

In some embodiments, the breath fresheners can include xylitol. Among other things, xylitol can be used as a natural sweetener that may help avoid and/or fight cavities.

In some embodiments, the breath fresheners can include zinc gluconate (which, e.g., may block receptors on the anaerobic bacteria such that they will not bind with certain amino acids) such as in, e.g., ZOX mints.

In some embodiments, in which the breath fresheners include components that reduce bacteria, the breath fresheners can include one or more aspect of LISTERINE POCKET PAKS oral strips. In some embodiments, the strips can dissolve quickly in a user's mouth (such as, e.g., within about 30 seconds).

In some embodiments, the breath fresheners can include one or more of the following ingredients (such as, e.g., found in LISTERINE POCKET PAKS): pullulan; flavors; menthol; aspartame; potassium acesulfame; copper gluconate; polysorbate 80; carrageenan; glyceryl oleate; eucalyptol; methyl salicylate; thymol; locust bean gum; propylene glycol; xanthan gum; coloring (e.g., FD&C green no. 3).

In some embodiments, the breath fresheners can include one or more ingredient having anesthetic properties, such as, e.g., dyclonine and/or hexylresorcinol (which can be found in, e.g., SUCRETS lozenges) and/or other anesthetic elements.

In some examples, as set forth above, the breath fresheners can include gum breath fresheners. In some illustrative example, gum breath fresheners can include one or more of

US 7,237,677 B2

9

the following ingredients (such as, e.g., found in WRIG-LEY'S ECLIPSE peppermint gum): maltitol; gum base; sorbitol; acacia; mannitol; glycerol; natural and artificial flavors; aspartame; color added; acesulfame K; carnauba wax; BHT (to maintain freshness); phenylalanine and/or the like. In some illustrative example, gum breath fresheners can include one or more of the following ingredients (such as, e.g., found in EVEREST POWERFUL MINT GUM: ECLIPSE peppermint gum): sugar; gum base; corn syrup; dextrose; natural flavors (including, e.g., peppermint oil); gum Arabic; xylitol and, e.g., about 2% or less of glycerine, titanium dioxide (or other colorant), confectioner's glaze, carnauba wax, acesulfame K, aspartame, maltodextrin, BHT; and/or the like. In some illustrative example, gum breath fresheners can include one or more of the following ingredients (such as, e.g., found in WRIGLEY'S SPEARMINT chewing gum sticks): sugar; gum base; corn syrup; dextrose; natural and artificial flavors, softeners, acesulfame K, BHT and/or the like).

In some embodiments, each individual breath freshener can be individually wrapped within the container (such as, e.g., gum sticks which can, e.g., be wrapped with a paper material, a plastic material, a foil material (such as, e.g., a metalized foil, etc.) and/or the like. In some embodiments, two or more sets of a plurality of breath fresheners can be separately wrapped within the container. In some embodiments, all of the breath fresheners in the container can be wrapped insider the container, such as, e.g., using a paper wrap inside of a container (such as, e.g., seen in ALTOIDS mints).

In some embodiments, when an internal mirror is employed, preferably the oral-products will not have a significant tendency to crumble such that particulate material (such as, e.g., dust from mints or the like) does not accumulate on the mirror.

With reference to FIG. 9, the figure shows a schematic diagram with a plurality of containers filled with oral products, such as, e.g., breath fresheners, contained within a transport package (such as, e.g., a crate, cardboard box, box and/or the like) according to some preferred embodiments. In this regard, in some embodiments, the oral product filled containers are preferably packaged with a plurality of oral products therein by a manufacturer and/or the like. Then, the products are preferably sold and transported in a packaged state to distributors and/or retailers. Then, the products are preferably sold to end customers or users of the products. In some preferred embodiments, a multitude of filled containers are packaged in transport packages for transport from the manufacturer to the distributor(s) and/or the retailer(s) and/or for transport to the end customer(s).

As described above with reference to FIG. 4, in some embodiments a mirror can be formed underneath a separate mirror cover. In that regard, FIG. 4 shows a mirror cover that can be hinged to the container or that can include any other "covers or doors that are moved using other now or later known methodologies" (language quoted from below under Broad Scope of the Invention) such as, by way of example, employing a slider cover similar to that shown in FIG. 2. In this regard, FIG. 18 shows some illustrative embodiments in which a slidable mirror cover can be used to cover a container having a base and a mirror supporting insert fitted therein. Notably, in preferred embodiments, the base and the insert together form a structure that can be similar to that shown in FIGS. 10-17(D). As discussed above, in these types of illustrative embodiments employing a separate mirror cover, the mirror can be protected from external

10

environmental factors (e.g., under the cover) and can be isolated from the container interior (e.g., separate from the oral product therein).

As described above, FIG. 10 is a front perspective view according to some embodiments, FIG. 11 is a first end view taken from the left side of the embodiment shown in FIG. 10, FIG. 12 is a second end view taken from the right side of the embodiment shown in FIG. 10, FIG. 13 is a side view taken from a front side of the embodiment shown in FIG. 10, FIG. 14 is a side view taken from a back side of the embodiment shown in FIG. 10, FIG. 15 is a top view of the embodiment shown in FIG. 10, and FIG. 16 is a bottom view of the embodiment shown in FIG. 10.

In the preferred embodiments, in the device shown in FIG. 10, a base (which is preferably formed of metal, such as, e.g., aluminum, steel, tin and/or any other appropriate metal) is provided that contains (e.g., snugly receives) an insert (which is preferably formed of plastic or the like) that supports a mirror as shown. In this regard, as shown in FIG. 15, the insert preferably includes a mirror that is mounted thereon. For example, the insert can include a recess that is configured to surround the mirror and to support the mirror such that a front face of the mirror is substantially flush with a front face of the insert.

In the preferred embodiments, as shown in FIG. 18, during assembly, the insert can be initially removed. Then, product (e.g., mints can be easily loaded into the base). Then, the insert can be easily placed over the product so as to contain the same within the base. Preferably, the insert includes a plurality of depending wide leg portions that taper slightly inwards to snugly wedge into the base when inserted (in the illustrated embodiment, four leg portions are shown by way of example). Preferably, the legs slide freely around any product within the base. In this manner, filling is simplified and does not need to be done via the small dispensing opening or the like. In addition, the mirror can be supported external to the product. In addition, the mirror can be supported internal to an external cover. In addition, the mirror can be supported on a substantially rigid, but flexibly member (e.g., using a plastic insert having some resiliency) such that if the cover does bend, the insert can have some freedom of movement further protecting the mirror in some embodiments.

With reference to FIG. 15, in some embodiments, the dispensing opening includes a punch-put cover plate (not shown) sized to fit the opening. For instance, the plate could attach a few points around the opening to the insert body. Then, upon use, a user could punch out the plate and discard the cover plate or push the same down into the container. In some embodiments, however, the opening does not need to employ a cover plate, but the small opening can remain open. In the preferred embodiments, however, the insert substantially separates the mirror from the product compartment area (with, in some embodiments, a small exception for the region of the dispensing opening if such is open).

With respect to FIGS. 17(A)-17(D), these embodiments show other variations in which: FIG. 17(A) shows a view in which all lines shown in dashes are optional, but where the container includes a small opening in the upper surface at the location shown (NB: the opening can have a variety of shapes an this embodiment shows an illustrative circular opening which can be employed); FIG. 17(B) shows a view in which the mirror is not formed to surround the opening, but is formed into a generally rectangular configuration (NB: this embodiment also shows an illustrative circular opening); FIG. 17(C) is similar to FIG. 17(B) with the opening at a different location; and FIG. 17(D) is similar to the

US 7,237,677 B2

**11**

embodiments shown in FIGS. **17**(B) and **17**(C) but shows the opening in dashed lines to demonstrate that in other embodiments, the opening can be at any other desired location (such as, e.g., even formed into the base or another location or the like.

With respect to the embodiments shown in FIGS. **10-18**, these embodiments depict some preferred embodiments, substantially to scale according to some preferred embodiments of the invention. In some preferred embodiments, devices having the ornamental design as shown in these FIGS. are preferably implemented, which figures are substantially to scale and proportional in some illustrative embodiments.

Broad Scope of the Invention

While illustrative embodiments of the invention have been described herein, the present invention is not limited to the various preferred embodiments described herein, but includes any and all embodiments having modifications, omissions, combinations (e.g., of aspects across various embodiments), adaptations and/or alterations as would be appreciated by those in the art based on the present disclosure. As merely other examples, various other embodiments can include containers with fully removable covers, replaceable covers and/or covers or doors that are moved using other now or later known methodologies. The limitations in the claims are to be interpreted broadly based on the language employed in the claims and not limited to examples described in the present specification or during the prosecution of the application, which examples are to be construed as non-exclusive. For example, in the present disclosure, the term "preferably" is non-exclusive and means "preferably, but not limited to." Means-plus-function or step-plus-function limitations will only be employed where for a specific claim limitation all of the following conditions are present in that limitation: a) "means for" or "step for" is expressly recited; b) a corresponding function is expressly recited; and c) structure, material or acts that support that structure are not recited.

What is claimed is:

**1**. An oral-product container, comprising:

a) a plurality of breath fresheners contained therein for breath freshening purposes;

b) a mirror unmovably fixed to said container for visage freshening purposes;

c) a mirror cover such that the mirror can be protected from external environmental factors under the cover;

d) wherein said mirror is isolated from the container interior such as to be separate from the oral product; and

e) wherein said mirror is suoported on a wall that is fixed relative to an opening in said container through which said breath fresheners are dispensed.

**2**. The oral-product container of claim **1**, wherein said mirror is supported underneath said cover and wherein said cover is mounted so as to move relatively to said mirror to expose said opening.

**3**. The oral-product container of claim **2**, wherein said cover is mounted so as to slide laterally in a plane substantially parallel to said mirror.

**4**. The oral-product container of claim **2**, wherein said cover is mounted so as to pivot relatively to said mirror.

**5**. An oral-product container, comprising:

a) a container body;

b) a plurality of breath fresheners or candies within said container;

b) a laterally sliding lid on said container body;

**12**

c) a mirror beneath said laterally sliding lid and unmovably fixed to said container body;

d) wherein said container is configured to expose both said mirror and an oral-product dispensing opening by lateral motion of said lid.

**6**. The oral product container of claim **5**, wherein said oral-product dispensing opening is on a common wall with said mirror.

**7**. The oral-product container of claim **5**, wherein said product dispensing opening is sized to dispense only a few breath fresheners or candies at a time and is substantially smaller than a side face of the container through which said dispensing opening passes.

**8**. An oral-product container, comprising:

a) a plurality of breath fresheners contained therein for breath freshening purposes;

b) a mirror for visage freshening purposes and unmovably fixed to said container:

c) a lid for covering said mirror, said lid being mounted on said container in a manner to move relative to the mirror;

d) wherein said container includes a dispensing opening configured to dispense a few breath fresheners at a time, said dispensing opening having an area less than about 10 times the size of said breath fresheners.

**9**. The container of claim **8**, wherein said mirror is supported upon an insert within said container.

**10**. The container of claim **9**, wherein said insert is formed from a molded plastic.

**11**. The container of claim **10**, wherein said container is formed with a metal.

**12**. The container of claim **8**, wherein said mirror is supported upon a wall within said container that is not an external wall of said container.

**13**. The container of claim **12**, wherein said wall upon which said mirror is supported is an outer wall of a plastic insert and wherein said container is a metal container that encases said insert when said lid is closed.

**14**. The container of claim **8**, wherein said lid is configured to move between a closed state in which said lid obstructs both said mirror and a dispensing opening and an open state in which said lid exposes both said mirror and said dispensing opening.

**15**. An oral-product container, comprising:

a) a plurality of breath fresheners contained therein for breath freshening purposes;

b) a mirror for visage freshening purposes unmovably fixed to said container;

c) a lid for covering said mirror in a closed state and for exposing said mirror in a open state;

d) a product dispensing opening in said container, wherein said mirror is fixedly positioned with respect to said product dispensing opening so as not to move relative thereto.

**16**. The container of claim **15**, wherein said mirror is supported upon an insert within said container.

**17**. The container of claim **16**, wherein said insert is formed from a molded plastic.

**18**. The container of claim **15**, wherein said mirror is supported upon a wall within said container that is not an external wall of said container.

**19**. The container of claim **18**, wherein said wall that supports said mirror is an outer wall of a plastic insert and wherein said container is a metal container that surrounds said insert when said lid is dosed.

**20**. The container of claim **15**, wherein said lid is configured to move between a dosed state in which said lid

US 7,237,677 B2

**13**

obstructs both said mirror and a dispensing opening and an open state in which said lid exposes both said mirror and said dispensing opening.

**21**. The container of claim **15**, wherein said lid is mounted for lateral sliding movement between a closed state and an open state.

**14**

**22**. The container of claim **15**, wherein said lid is mounted for pivotal movement between a closed state and an open state.

* * * * *

# EXHIBIT B

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Mon May 6 02:47:23 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

MIRROR MINTS

| | |
|---|---|
| **Word Mark** | MIRROR MINTS |
| **Goods and Services** | IC 030. US 046. G & S: CANDY, BREATH MINTS. FIRST USE: 20040604. FIRST USE IN COMMERCE: 20040617 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78370092 |
| **Filing Date** | February 18, 2004 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 18, 2005 |
| **Registration Number** | 2939960 |
| **International Registration Number** | 0881820 |
| **Registration Date** | April 12, 2005 |
| **Owner** | (REGISTRANT) Innovative Product Development, Inc. DBA Little i CORPORATION CALIFORNIA 815 3rd Street Blaine WASHINGTON 98230

(LAST LISTED OWNER) LITTLE I, INC. CORPORATION WASHINGTON 711 3RD STREET BLAINE WASHINGTON 98230 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE MINTS APART FROM THE MARK AS SHOWN |

| | |
|---|---|
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  TOP  HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

## Assignments on the Web > Trademark Query

# Trademark Assignment Abstract of Title

### Total Assignments: 1

**Serial #:** 78370092     **Filing Dt:** 02/18/2004       **Reg #:** 2939960       **Reg. Dt:** 04/12/2005

**Registrant:** Innovative Product Development, Inc.

**Mark:** MIRROR MINTS

### Assignment: 1

**Reel/Frame:** 4723/0279     **Received:** 02/23/2012       **Recorded:** 02/23/2012       **Pages:** 2

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** INNOVATIVE PRODUCT DEVELOPMENT, INC.       **Exec Dt:** 02/20/2012

                                                   **Entity Type:** CORPORATION

                                                   **Citizenship:** CALIFORNIA

**Assignee:** LITTLE I, INC.                           **Entity Type:** CORPORATION

            711 3RD STREET                                    **Citizenship:** WASHINGTON

            BLAINE, WASHINGTON 98230

**Correspondent:** PAUL MAKI

                    888 MILILANI STREET

                    8TH FLOOR

                    HONOLULU, HI 96813

Search Results as of: 05/06/2013 05:45 PM

If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.3.2

Web interface last modified: July 10, 2012 v.2.3.2

| .HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT |

**EXHIBIT C**

# HP LaserJet *3200se*



NOVAKDRUCE, LLP
2026590105
JUL-26-2005   4:34PM

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 746 | 7/26/2005 | 4:32:14PM | Send | 912122606883 | 1:32 | 3 | OK |

NOVAK DRUCE LLP

Suite 400, East Tower
1300 Eye Street, NW
Washington, D.C. 20005

Telephone: (202) 204-4733
Telefax: (202) 318-7811

## FACSIMILE TRANSMITTAL SHEET

DATE:      July 26, 2005

TO:        Amy Katz
           World Packaging

**FACSIMILE NO.:     212-260-6883**

FROM:       Stephen B. Parker, Esq.

ATTORNEY DOCKET NO:

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENCY RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.    IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICES. THANK YOU.

Number of Pages Including This Transmittal Sheet: _____3

If any problems in connection with this facsimile, please contact: Joy at 202-659-0100.

MESSAGE, IF ANY:

**NOVAK DRUCE** LLP
ATTORNEYS AT LAW

NOVAK
DRUCE
DeLUCA
&
QUIGG

1300 EYE STREET, N.W.
400 EAST TOWER
WASHINGTON, DC 20005

TELEPHONE
202.659.0100

FACSIMILE
202.659.0105

www.novakdruce.com

July 26, 2005

### *VIA FACSIMILE*

Attn: Amy Katz
World Packaging
36 East 20th Street
New York, NY 10003

### Re: **Inquiry Regarding Innovative Product Development Patent Portfolio:**
**MIRROR MINTS® Mint Container Products.**

I represent Innovative Product Development (Innovative). I understand from Mr. Berg that you may have some questions in relation to Innovative's patent portfolio covering the MIRROR MINTS® mint container products. In that regard, Innovative has various pending patent applications (including various Design Patent Applications and various Utility Patent Applications), in both the U.S. and abroad.

For your reference, Innovative has historically zealously enforced its issued patents against infringers. By way of example, we have worked with Mr. Berg to obtain broad protection on patents covering other container types, and we recently succeeded in enforcing patents related to another of Innovative's products in the District Court of Hawaii in Innovative Product Development, et al. v. Fantas-Eyes, et al., CV04-00021 (October 26, 2004 Order of the Honorable Samuel holding that defendants be "permanently enjoined and restrained from infringing" the patents). As for the MIRROR MINTS® mint container products, we are confident that we will obtain the broadest protection available under the circumstances. For your reference, I am rather familiar with the patenting of product containers and dispensers, and I even previously worked as a patent examiner in the U.S. Patent Office examining in the classification of product dispensers.

 



Amy Katz
World Packaging
July 26, 2005
Page 2

        If your company is interested in pursuing products that may
potentially fall under Innovative's intellectual property rights, Mr. Isaac
Berg, President of Innovative, would consider meeting with you to
discuss the possibility of establishing a collaborative relationship.  Mr.
Berg believes that there may be a good potential to establish a Win/Win
arrangement between your companies.  Toward that end, Mr. Berg plans
to be in New York from August 13-18.  If you would like to meet with Mr.
Berg during that time period, please let us know.

        If you have any questions, please do not hesitate to contact me.

                          Sincerely,


                          Stephen B. Parker

cc:  R. Isaac Berg, Esq.
SBP/jnj

**EXHIBIT D**

 

ASI 98289   PPAI 217084

search...

About Us    Ordering Info    Distributors    Catalog    Direct Sourcing    Contact Us

New For 2013

**Tins, Containers & Candy**

Tins, Containers & Candy

4 Color Process Printing

Bags

Tech Gadgets

Health & Beauty

Green Products

Trendy & New

Special Order

Case Studies

Closeouts

Specials



### Mirror Mint Tin
Slide tin with mirror filled with mints
**Product Details...**



### Small Square Hinge Tin - item# 235
Small rounded square hinge tin filled with mints.
**Product Details...**



### Small Paint Can
Small paint can tin with faux leather handles.
**Product Details...**



### Square Tin Box
Square tin with slip lid.
**Product Details...**



### Cylinder Tin - Tall
Tall cylinder tin tube with seamelss lid
**Product Details...**

### Large Clik Clak
Large clik clak tin filled with 3 silk tea sachets.
**Product Details...**

### Mini mint dispenser
Mini mint dispenser
**Product Details...**



### Large Pillow Pak
linen textured pillow box filled with handcrafted caramels in three delicious flavors- plain, sea salt and chocolate sea salt
**Product Details...**



### Clik Clak Tin - Item #201

12g tin with mints

**Product Details...**



### Slide Tin - Item #202

10g tin with mints

**Product Details...**



### Hinge Tin - Item #203

20g tin with mints

**Product Details...**



### Square Hinge Tin - Item #225

20g tin with mints

**Product Details...**



### Large Hinge Tin - Item #213

50g tin with mints

**Product Details...**



### Tool Box™ Tin - Item #204

28g tin with mints

**Product Details...**



### Business Card Case - Item #222

Aluminum card case

**Product Details...**



### Business Card Case with Mints - Item #205

28g card case with mints

**Product Details...**



### Baseball Tin - Item #208

20g tin with mints

**Product Details...**



**Basketball Tin - Item #207**

20g tin with mints

**Product Details...**



**Power Puck™ - Item #401**

6g plastic card

**Product Details...**



**Master Mint Card™ - Item #402**

7g mint card

**Product Details...**

«« Start   « Prev   1   **2**   **Next »**   **End »»**

Display #   20

Results 1 - 20 of 26

  

Copyright 2011 ClikClak Co. Promotional, private label and retail products.

**Joomla Programmers** | **OGO Sense**

 

ASI 98289   PPAI 217084

search…

About Us    Ordering Info    Distributors    Catalog    Direct Sourcing    Contact Us

New For 2013

*Tins, Containers & Candy*

4 Color Process Printing

Bags

Tech Gadgets

Health & Beauty

Green Products

Trendy & New

Special Order

Case Studies

Closeouts

Specials

# Mirror Mint Tin

Tweet  0       Like       2 people like this. Sign Up to see what your friends like.



REQUEST A QUOTE FOR THIS PRODUCT

| Description | **Pricing** | Shipping |
|---|---|---|

Slide tin with mirror filled with mints

Item Size | 3 1/8"L x 1 3/8"W x ½"D
Imprint Method | Pad Print
Max Imprint Area | 2"W x 1"H
Max # of Imprint Colors | 4
Product Color | Silver

 

Copyright 2011 ClikClak Co. Promotional, private label and retail products.
Joomla Programmers | OGO Sense

ASI 98289   PPAI 217084

 

search...

About Us    Ordering Info    Distributors    Catalog    Direct Sourcing    Contact Us

New For 2013

**Tins, Containers & Candy**

4 Color Process Printing

Bags

Tech Gadgets

Health & Beauty

Green Products

Trendy & New

Special Order

Case Studies

Closeouts

Specials

# Mirror Mint Tin

Tweet  0      Like      2 people like this. Sign Up to see what your friends like.



REQUEST A QUOTE FOR THIS PRODUCT

**Description**    Pricing    **Shipping**

| Quantity | Price |
|----------|-------|
| 250 | $2.18 |
| 500 | $2.12 |
| 1000 | $2.05 |
| 2500 | $2.02 |

Pricing listed above is based on an R
Run Charges $0.20 V per color/location
Set Up Charges $60 V per color/location
PMS color match charges $40 R per color if applicable

  

Copyright 2011 ClikClak Co. Promotional, private label and retail products.
**Joomla Programmers** | **OGO Sense**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Little i, Inc., | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. World Packaging Corp., | CV 13-03639 JC |
| DEFENDANT(S). | SUMMONS |

TO:   DEFENDANT(S): World Packaging Corp.•

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Evan A. Raynes_____, whose address is  Symbus Law Group, LLC, 1425 K Street, N.W., Suite 350, Washington, D.C. 20005____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: May 21, 2013

By: _____MARILYN_____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Little i, Inc.<br>713 3rd Street<br>Blaine, Washington 98230 | World Packaging Corp.<br>68 Jay Street, Suite 301<br>Brooklyn, New York 11201 |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Symbus Law Group, LLC<br>725 K Street, N.W., Suite 350<br>Washington, D.C. 20005 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No      ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
35 U.S.C. § 271; 15 U.S.C. §§ 1114, 1125(a). Patent and Trademark Infringement.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: **CV13-03639**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

---

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes

If yes, list case number(s): _____

---

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Washington |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | New York |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Tris. Raynor_   Date May 21, 2013

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |